J-A07045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| H.L.K. | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| F.A.A. | |
| Appellant | No. 1831 WDA 2014 |

Appeal from the Order Entered October 23, 2014
In the Court of Common Pleas of Allegheny County
Family Court at No(s): FD09-07348-009

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUNDY, J.

MEMORANDUM BY MUNDY, J.:                    **FILED AUGUST 28, 2015**

Appellant, F.A.A. (Father) appeals from the October 23, 2014 order, concluding that the family court had jurisdiction to make an initial custody determination pursuant to Section 5421(a) of the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA), 23 Pa.C.S.A. § 5401-5482.  The order further declined to register the custody order issued in the Kingdom of Saudi Arabia pursuant to Section 5445(d)(1) and under principles of comity.  After careful review, we affirm.

The relevant factual background, as gleaned from the certified record, follows.  H.L.K. (Mother), a citizen of the United States, and Father, a citizen of Saudi Arabia, married in Allegheny County in 1994.  Family Court Opinion, 10/23/14, at 2.  That same year, the parties moved to Saudi Arabia, where their son, M.A.R., was born in October 1996, and their daughters, M.A.R.

and M.A.R., were born in January 2000, and September 2001. *Id.* The three children are dual citizens of the United States and of Saudi Arabia. *Id.*

Mother and Father divorced in October 2012, and Mother returned alone to the United States. Family Court Opinion, 10/23/14, at 2. In June 2013, Father permitted the three children to visit Mother for the summer months in Allegheny County. *Id.* The parties' daughters have remained with Mother in Allegheny County since that time, but the parties' son returned to Saudi Arabia on August 18, 2013. *Id.* at 3.

The procedural history of this case may be summarized as follows. In August of 2013, Mother filed a *pro se* complaint for custody in Allegheny County, wherein she requested primary custody of the three children. *Id.* By order dated August 7, 2013, the family court granted Mother's custody request. On October 9, 2013, Father filed an emergency motion to vacate the order, wherein he alleged that he did not receive timely notice of the complaint, and that the family court lacked jurisdiction under the UCCJEA. *Id.* On November 7, 2013, the family court vacated the custody order and assumed interim emergency jurisdiction pending a hearing on jurisdiction, which occurred on March 26, 2014. *Id.* at 3-4. By order dated April 2, 2014, the family court found that it did not have jurisdiction over the custody action. *Id.* at 4; Order, 4/2/14.

Thereafter, on April 17, 2014, Father initiated a custody action in Saudi Arabia, wherein he sought custody of the three children. Family Court

Opinion, 10/23/14, at 4. On May 23, 2014, Mother filed a second custody complaint in Allegheny County, wherein she sought primary physical and shared legal custody of the parties' daughters.[1] *Id.*; Complaint for Custody, 5/23/14. On May 27, 2014, the family court issued a rule to show cause upon Mother to show why her second complaint should not be dismissed for lack of jurisdiction. Family Court Opinion, 10/23/14, at 4.

On July 17, 2014, a Saudi Arabian court issued a custody order that granted Father sole custody of the parties' daughters. Family Court Order, 7/17/14. On July 25, 2014, Father filed in Allegheny County a request for registration of the child custody order in Saudi Arabia. On August 11, 2014, Mother filed an objection to the registration and enforcement of the foreign custody order.

The family court held a hearing on both the jurisdictional and registration issues on October 9, 2014, during which Mother testified. The family court found, in part, that it has jurisdiction over Mother's second custody complaint, and that the order "entered in the Kingdom of Saudi Arabia dated July 17, 2014 shall not be registered and is not entitled to enforcement in this Commonwealth[.]" Family Court Order, 10/23/14, at ¶ 3.

_____

[1] Mother did not request custody of the parties' son, who is now eighteen years old and living in Saudi Arabia. As such, he is not a subject of this appeal.

On November 5, 2014, Father filed a notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). By order dated November 12, 2014, the family court stated that the reasons for the subject order "already appear of record in [the family court's] Memorandum dated October 23, 2014…." Order, 11/12/14.

On appeal, Father raises the following issues for our review.

> [1.] Is Pennsylvania the home state of the minor children?
>
> [2.] Did the temporary absence exception to the home state rule apply?
>
> [3.] Did Mother engage in unjustifiable conduct when retaining the children?
>
> [4.] Should the [family] court have proceeded when there was a custody action pending in Saudi Arabia?
>
> [5.] Should the Saudi Custody Order be registered with the [family] court?

Father's Brief at vi.

Our standard of review for decisions involving jurisdiction is as follows.

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of discretion. Under Pennsylvania law an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the [family] court misapplied the law or failed to follow proper legal procedures.

***Wagner v. Wagner***, 887 A.2d 282, 285 (Pa. Super. 2005) (citation omitted).

Instantly, the family court concluded that it had jurisdiction to make an initial custody determination pursuant to Section 5421(a) of the UCCJEA, which provides as follows.[2]

> **§ 5421.  Initial child custody jurisdiction.**
>
> (a)  *General rule.*  --Except as otherwise provided in section 5424 (relating to temporary emergency

_____

[2] In this case, the family court treated the Kingdom of Saudi Arabia as a state of the United States pursuant to the following provision.

> **§ 5405.  International application of chapter.**
>
> (a)  *Foreign country treated as state.*  --A court of this Commonwealth shall treat a foreign country as if it were a state of the United States for the purpose of applying Subchapter B (relating to jurisdiction) and this subchapter.
>
> (b)  *Foreign custody determinations.*  --Except as otherwise provided in subsection (c), a child custody determination made in a foreign country under factual circumstances in substantial conformity with the jurisdictional standards of this chapter must be recognized and enforced under Subchapter C (relating to enforcement).
>
> (c)  *Violation of human rights.*  --A court of this Commonwealth need not apply this chapter if the child custody law of a foreign country violates fundamental principles of human rights.

23 Pa.C.S.A. § 5405.

jurisdiction), a court of this Commonwealth has jurisdiction to make an initial child custody determination only if:

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

(i) the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

(ii) substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

23 Pa.C.S.A. § 5421(a). The UCCJEA defines "home state" as "[t]he state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding…. A period of temporary absence of any of the mentioned persons is part of the period." 23 Pa.C.S.A. § 5402.

The family court found that, at the time Mother filed her second custody complaint, the parties' daughters had been living with Mother in Allegheny County for more than six months. Therefore, pursuant to Section 5421(a)(1), the family court concluded that it had "'home state' jurisdiction to make the initial child custody determination." Family Court Opinion, 10/23/14, at 8.

In his first and second issues on appeal, Father argues Pennsylvania is not the "home state" because the parties intended that their daughters' stay in Pennsylvania would be temporary, lasting only for the summer of 2013. Father's Brief at 10. As such, Father implies that Saudi Arabia is the "home state" of the parties' daughters, and that their "period of temporary absence" should be "treated as if [they] never left" Saudi Arabia pursuant to Section 5402. *Id.* at 8.

Upon careful review, we discern no abuse of discretion by the family court. We adopt the family court's cogent opinion as dispositive of Father's first and second issues on appeal. ***See*** Family Court Opinion, 10/23/14, at

- 7 -

5-8 (finding that, "by at least August 18, 2014, when the parties' son returned to Saudi Arabia without the parties' daughters, Father became aware that the daughters would not be returning to Saudi Arabia and that Mother intended the daughters to reside permanently with her in Pennsylvania. Consequently, when Father initially became aware of Mother's intent to keep the daughters here in Pennsylvania, the absence from Saudi Arabia was no longer considered 'temporary.'" *Id.* at 8, *citing* **M.E.V. v. R.D.V.**, 57 A.3d 126, 133 (Pa. Super. 2012)).[3,4]

In his third issue, Father argues that Mother engaged in unjustifiable conduct when she retained the parties' daughters in the United States.

─────────────────────────

[3] The family court concluded that, "in order to preserve the 'home state' status in Saudi Arabia, Father should have initiated simultaneous custody proceedings in Saudi Arabia within six months of learning that his daughters were not returning. Nothing prevented him from doing so." Family Court Opinion, 10/23/14, at 15 n.8.

[4] In the argument section of his brief, Father asserts that the family court erred in failing to dismiss Mother's second custody complaint because she filed it "within two month[s] of the initial determination [declining to exercise jurisdiction over Mother's first custody complaint] and the children's stay was extended because of the lengthy time it took to schedule the initial jurisdiction hearing." Father's Brief at 12. We observe that Father did not assert this error in his concise statement of errors complained of on appeal. In addition, Father did not raise this issue in the Statement of Questions Involved in his brief. Therefore, we conclude that Father's claim is waived. *See Dietrich v. Dietrich*, 923 A.2d 461, 463 (Pa. Super. 2007) (stating that when an appellant filed a Rule 1925(b) statement, any issues not raised in that statement are waived on appeal); *accord* Pa.R.A.P. 1925(b)(4)(vii).

Father's Brief at 12. Father asserts the family court should have declined jurisdiction pursuant to Section 5428(a), which provides as follows.

> **§ 5428. Jurisdiction declined by reason of conduct.**
>
> (a) *General rule.* --Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction) or by other laws of this Commonwealth, if a court of this Commonwealth has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:
>
>> (1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;
>>
>> (2) a court of the state otherwise having jurisdiction under sections 5421 (relating to initial child custody jurisdiction) through 5423 (relating to jurisdiction to modify determination) determines that this Commonwealth is a more appropriate forum under section 5427 (relating to inconvenient forum); or
>>
>> (3) no court of any other state would have jurisdiction under the criteria specified in sections 5421 through 5423.

23 Pa.C.S.A. § 5428(a).

Based upon our careful review, we conclude that the family court has ably addressed Father's third issue. Therefore, we likewise adopt the family court's well-reasoned opinion as dispositive of Father's arguments related to this issue. *See* Family Court Opinion, 10/23/14, at 8-13 (finding: (1) "when Mother chose to keep the parties' daughters in Allegheny County in August

- 9 -

of 2013 instead of sending them back to Saudi Arabia with the parties' son, her conduct was justified"; (2) "Assuming *arguendo* that Mother's conduct in retaining the parties' daughters in Pennsylvania is considered unjustified, this Court still declines to apply the general rule stated in Section 5428(a), because of the exceptions contained in 23 Pa.C.S.A. § 5428(a)(1) and (3)").

In his fourth issue, Father argues that the family court erred in exercising jurisdiction over Mother's second custody complaint filed on May 23, 2014, when Father's custody action in Saudi Arabia, filed on April 17, 2014, was pending, of which Mother was served with notice on May 20, 2014. The following provision of the UCCJEA is applicable.

### § 5426.  Simultaneous proceedings.

(a)  *General rule.*  --Except as otherwise provided in section 5424 (relating to temporary emergency jurisdiction), a court of this Commonwealth may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced **in a court of another state having jurisdiction substantially in conformity with this chapter** unless the proceeding has been terminated or is stayed by the court of the other state because a court of this Commonwealth is a more convenient forum under section 5427 (relating to inconvenient forum).

23 Pa.C.S.A. § 5426(a) (emphasis added).

Upon review, we discern no abuse of discretion by the family court. We adopt the family court's cogent opinion as also dispositive of Father's fourth issue on appeal. **See** Family Court Opinion, 10/23/14, at 13 (finding

that "Saudi Arabia no longer had jurisdiction under the UCCJEA at the time Father initiated proceedings there on April 17, 2014. Therefore, because a child custody proceeding had not been commenced in another state 'having jurisdiction substantially in conformity with (the UCCJEA,)' this Court finds that … Section 5426[(a)] does not apply").

In his fifth and final issue, Father argues that the family court erred in failing to register the custody order issued in Saudi Arabia on July 17, 2014, granting Father sole custody of the parties' daughters. The following provision of the UCCJEA is applicable.

**§ 5445. Registration of child custody determination.**

…

(d) *Contest over validity of registered order.* --A person seeking to contest the validity of a registered order must request a hearing within 20 days after service of the notice. At that hearing, the court shall confirm the registered order unless the person contesting registration establishes that:

(1) the issuing court did not have jurisdiction under Subchapter B (relating to jurisdiction);

(2) the child custody determination sought to be registered has been vacated, stayed or modified by a court having jurisdiction to do so under Subchapter B; or

(3) the person contesting registration was entitled to notice, but notice was not given in accordance with the standards of section 5408 (relating to notice to persons outside Commonwealth), in the proceedings before the

- 11 -

> court that issued the order for which registration is sought.

23 Pa.C.S.A. § 5445(d).

The family court concluded that, "the Saudi Order is not entitled to registration because Saudi Arabia did not have jurisdiction to enter the initial child custody determination when Father initiated proceedings there on April 17, 2014." Family Court Opinion, 10/23/14, at 16. Father contends on appeal that he waited to initiate a custody action in Saudi Arabia until the conclusion of the family court's decision regarding jurisdiction over Mother's first custody complaint so as "to avoid simultaneous proceedings." Father's Brief at 17. Further, Father argues there was "[a] breakdown in the court system [that] caused [the] jurisdiction hearing to be delayed five months from the date it was requested." *Id.* He asserts that, "[h]ad the court scheduled the jurisdiction hearing in a timely manner," he would have filed the custody action in Saudi Arabia sooner. *Id.*

We discern no abuse of discretion by the court in declining to register the custody order issued in Saudi Arabia pursuant to Section 5445(d)(1). The family court recognized that "there was a lengthy delay in deciding whether it had jurisdiction over Mother's [f]irst [c]omplaint." Family Court Opinion, 10/23/14, at 15, n. 8. Nevertheless, we conclude the family court properly determined that, Father "should have initiated simultaneous custody proceedings in Saudi Arabia within six months of learning that his daughters were not returning. Nothing prevented him from doing so." *Id.*

Based on the foregoing, we conclude that all of Father's issues on appeal are devoid of merit. Accordingly, the family court's October 23, 2014 order is affirmed.

Order affirmed.[5]

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/28/2015

---

[5] In the alternative, the family court declined to register the July 17, 2014 custody order issued in Saudi Arabia under principles of comity, finding that the order violated the public policy of Pennsylvania. Because we conclude that the family court did not abuse its discretion in declining to register the foreign custody order pursuant to Section 5445(d)(1), we need not decide whether the Saudi court's order is contrary to public policy.

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA
FAMILY DIVISION

HLK

Plaintiff,

v.

FAA

Defendant.

No.: FD 09-007348-009

## MEMORANDUM

BICKET, J.                                                   October 22, 2014

On May 23, 2014, Plaintiff filed a complaint for custody in Allegheny County. On May 27, 2014, a Rule to Show Cause was issued upon Plaintiff to show why her complaint should not be dismissed for lack of jurisdiction. On July 25, 2014, Defendant filed a request to have a foreign custody order registered in Allegheny County. Argument on the return of the rule was held on August 5, 2014. Plaintiff filed an objection the registration of the foreign custody order on August 11, 2014. Following briefing and a hearing on October 9, 2014, for the reasons set forth below, this Court finds that Plaintiff's complaint for custody should not be dismissed; that this Court has jurisdiction over the within matter; and that the foreign custody order should not be registered in Pennsylvania.

### BACKGROUND

Plaintiff, HLK (hereinafter, "Mother"), and Defendant, FAA (hereinafter, "Father"), formerly husband and wife, are the

1

23

parents of three children, M.A. (Age 18; D/O/B: 10/15/1996), MA (Age 14; D/O/B: 01/09/2000), anc MA (Age 13; D/O/B: 09/19/2001). Mother is a citizen of the United States and Father is a citizen of Saudi Arabia. Mother met Father in Allegheny County when she was 15 years old. The parties married in Allegheny County in 1994 when Mother was 18 years old. At the end of 1994, the parties moved to Saudi Arabia. Thereafter, the parties' three children were born. All three children are dual citizens of the United States and Saudi Arabia. At some point in the parties' relationship, Mother converted to Islam and all three children were raised in the Islamic faith in Saudi Arabia. In 2008, Mother moved back to Allegheny County and filed for divorce in Allegheny County in 2009. However, before a divorce decree was entered, she moved back to Saudi Arabia and continued her marriage to Father until October, 2012, at which point Mother and Father finally divorced. Immediately following the divorce, Mother believed she was required to leave Saudi Arabia because she was no longer sponsored by Father to remain legally in the country. She returned alone to Allegheny County on October 5, 2012. At that time, due to "guardianship" laws in Saudi Arabia, Mother was unable to return to Allegheny County with the children without Father's permission.

In June of 2013, Father permitted the children to visit Mother in Allegheny County. Initially, the parties' intent was for the children to visit Mother during the summer months and to return to Saudi Arabia to attend school in the fall. At some point in August of 2013, the parties' daughters allegedly informed Mother

2

24

of their desire to remain with her in the United States. On August 7, 2013, Mother, *pro se*, presented a Complaint for Confirmation of Custody/Complaint for Custody in Allegheny County, requesting custody of all three children (hereinafter, the "First Complaint"). Upon Father failing to appear, this Court issued an Order dated August 7, 2013, confirming Mother's primary custody of the three children. On August 18, 2013, the parties' son returned to Saudi Arabia. The parties' two daughters, however, remained with Mother and Mother enrolled them in school in the Mount Lebanon School District in Allegheny County for the 2013 school year.

On October 9, 2013, Father, appearing specially to challenge the jurisdiction of this Court, presented an emergency motion to vacate the August 7, 2013 Confirmation of Custody Order. Father argued that he did not receive timely notice of Mother's First Complaint and that this Court lacked jurisdiction to enter the Order under the Uniform Child Custody Jurisdiction and Enforcement Act (hereinafter, the "UCCJEA"). In turn, Mother, now represented by counsel, argued that Saudi Arabia should not be treated as a state pursuant to the "human rights exception" contained in the UCCJEA. (See 23 Pa. C.S.A. § 5405(c)). This Court directed each party to brief the "human rights exception" and took Father's emergency motion under advisement.

On November 7, 2013, in response to Father's emergency motion, this Court entered an Order which vacated the August 7, 2013 Order and assumed interim emergency jurisdiction based on the allegations in Mother's First

3

Complaint pending a full hearing on jurisdiction. Said hearing took place on March 26, 2014. Following the hearing, on April 4, 2014, this Court entered an Order finding that it lacked jurisdiction over Mother's First Complaint.[1] Since April 4, 2014, the parties' daughters have remained with Mother in Allegheny County and have attended school, doctors' appointments, and other activities here.

On April 17, 2014, Father initiated custody proceedings in Saudi Arabia. Mother was served with notice of the Saudi Arabian proceedings on May 20, 2014. On May 23, 2014, represented by new counsel, Mother filed another Complaint for Custody of the parties' two daughters in Allegheny County (hereinafter, the "Second Complaint"). On May 25, 2014, this Court issued a Rule to Show Cause upon Mother to show why her Second Complaint should not be dismissed for lack of jurisdiction. After each party briefed this Court on the relevant issues, oral argument was held on the record on August 5, 2014. In the meantime, an *ex parte* proceeding on Father's custody complaint in Saudi

---

1. Because it was clear that Pennsylvania did not have "home state" jurisdiction at the time Mother filed her First Complaint (as the parties' daughters had not lived in Pennsylvania for six months prior to the time she filed it), the March 26, 2014 hearing was held solely to address whether 23 Pa. C.S.A. § 5405(a), which states that foreign countries shall be treated as states of the United States, should not apply due to the allegations that Saudi Arabia custody law violates fundamental human rights pursuant to 23 Pa. C.S.A. § 5405(c), and/or whether this Court should continue its temporary emergency jurisdiction pursuant to 23 Pa. C.S.A. § 5424. Mother failed to present sufficient evidence showing that Saudi Arabian custody law violates fundamental human rights or that the parties' daughters were threatened with mistreatment or abuse in Saudi Arabia; therefore, this Court entered the April 4, 2014 Order finding it lacked jurisdiction over Mother's First Complaint. Neither party appealed.

4

26

Arabia occurred on June 29, 2014.[2] On July 17, 2014, a Saudi Arabian court issued a custody order that granted Father sole custody of the parties' children. On July 25, 2014, Father filed a request to have the Saudi custody order registered in Allegheny County. On August 11, 2014, pursuant to 23 Pa. C.S.A. § 5445(d), Mother filed an objection to the registration and enforcement of the Saudi Arabian order. A hearing on both the jurisdictional and registration issues occurred on October 9, 2014.[3]

## DISCUSSION

### I. JURISDICTION TO MAKE AN INITIAL CUSTODY DETERMINATION

Whether a court of this Commonwealth has jurisdiction to adjudicate Mother's Second Complaint is governed by the Uniform Child Custody Jurisdiction and Enforcement Act, set forth at 23 Pa. C.S.A. § 5401 et. seq. Courts of this Commonwealth have jurisdiction to make an initial custody determination only if:

---

2. This Court finds Mother was given adequate notice of the Saudi Arabian custody proceedings, but failed to appear. Mother testified that she did not attend the Saudi proceedings because she was afraid to go back, she did not think it was safe to return and thought she would be arrested, and she did not know how, or if, she could obtain a visa (even though she never contacted the U.S. or Saudi embassy to inquire). This Court finds Mother was reasonable and credible in her beliefs.

3. For reasons of judicial economy, this Court incorporated the relevant testimony and exhibits presented at the March 26, 2014 hearing into the current proceedings and permitted each party to supplement same. Neither party objected to the incorporation of the March 26th hearing into the current proceedings. See Jones v. Jones, 2005 Pa. Super. 337, 884 A.2d 916-17 (Pa. Super. 2005) (finding that incorporating testimony from a prior custody hearing between the parties was "an intelligent and efficient way to proceed, particularly when the same trial judge presided over the prior hearings"). The facts set forth within this Memorandum are from the testimony and relevant exhibits presented at both the March 26, 2014 hearing and the October 9, 2014 hearing, as well the joint stipulations of facts the parties' counsel orally read into the record at the October 9th hearing.

5

(1) this Commonwealth is the home state of the child on the date of the commencement of the proceeding or was the home state of the child within six months before the commencement of the proceeding and the child is absent from this Commonwealth but a parent or person acting as a parent continues to live in this Commonwealth;

(2) a court of another state does not have jurisdiction under paragraph (1) or a court of the home state of the child has declined to exercise jurisdiction on the ground that this Commonwealth is the more appropriate forum under section 5427 (relating to inconvenient forum) or 5428 (relating to jurisdiction declined by reason of conduct) and:

    (i)    the child and the child's parents, or the child and at least one parent or a person acting as a parent, have a significant connection with this Commonwealth other than mere physical presence; and

    (ii)    substantial evidence is available in this Commonwealth concerning the child's care, protection, training and personal relationships;

(3) all courts having jurisdiction under paragraph (1) or (2) have declined to exercise jurisdiction on the ground that a court of this Commonwealth is the more appropriate forum to determine the custody of the child under section 5427 or 5428; or

(4) no court of any other state would have jurisdiction under the criteria specified in paragraph (1), (2) or (3).

23 Pa. C.S.A. § 5421(a). "Home state" is defined as:

The state in which a child lived with a parent or a person acting as a parent for at least six consecutive months immediately before the commencement of a child custody proceeding. In the case of a child six months of age or younger, the term means the state in which the child lived from birth with any of the persons mentioned. A period of temporary absence of any of the mentioned persons is part of the period.

23 Pa. C.S.A. § 5402. A foreign country is treated as if it is a state of the United

6

28

States for the purposes of applying the provisions of the UCCJEA, unless the custody law of the foreign country violates fundamental human rights. 23 Pa. C.S.A. § 5405.

In the matter *sub judice*, the parties' daughters have clearly "lived" with Mother in Pennsylvania since June of 2013.[4] Thus, under the clear and unambiguous definition of "home state" contained in Section 23 Pa. C.S.A. § 5402, at the time Mother commenced the instant child custody proceeding by filing her Second Complaint on May 23, 2014, Pennsylvania was the two daughters' "home state," unless their absence from Saudi Arabia is considered temporary.

### A. Temporary Absence

Father argues that the daughters' absence from Saudi Arabia should be considered "temporary" and, therefore, not included in the calculation of time they lived with Mother in Pennsylvania, but instead included in the period of time the children have lived in Saudi Arabia. See Defendant's Reply Brief in Response to Rule to Show Cause (hereinafter "Father's Brief"), at pp. 4-5. Father's analysis is partly correct. When the children initially came to visit Mother in Allegheny County in June of 2013, the Court finds that the visit was intended to be temporary. However, by at least August 18, 2013, when the parties' son

---

4. The word "live" is synonymous with the word "reside." *R.M. v. J.S.*, 20 A.3d 496, 505 (Pa. Super. 2011). "The classic legal definition of the term 'residence' in this Commonwealth is 'living in a particular place, requiring only physical presence.'" *Wagner v. Wagner*, 887 A.2d 282, 286 (Pa. Super. 2005) (citing *Norman v. Pennsylvania Nat'l. Ins. Co.*, 684 A.2d 189, 191 (Pa. Super. 1996)). Utilizing this definition, the daughters have clearly "lived" with Mother in Pennsylvania since June, 2013.

7

returned to Saudi Arabia without the parties' daughters, Father became aware that the daughters would not be returning to Saudi Arabia and that Mother intended the daughters to reside permanently with her in Pennsylvania. Consequently, when Father initially became aware of Mother's intent to keep the daughters here in Pennsylvania, their absence from Saudi Arabia was no longer considered "temporary." See M.E.V. v. R.D.V., 57 A.3d 126, 133 (Pa. Super. 2012)(suggesting in dicta that a child's absence from his or her home state will no longer be considered temporary once the stay-at-home parent becomes aware of the other parent's intent). Additionally, Mother enrolled the daughters in school in Allegheny County in August of 2013, further indicating her intent for the children to permanently reside with her. At the time, there was no custody order in place and the parties merely disagreed as to where their daughters would live.

Because the parties' daughters had "lived" in Pennsylvania for over six months preceding the date Mother filed her Second Complaint (i.e. August 18, 2013 to May 23, 2014), pursuant to 23 Pa. C.S.A. § 5421(a), this Court has "home state" jurisdiction to make the initial child custody determination.

### B. Unjustifiable Conduct

Father further argues that this Court should decline jurisdiction because Mother has engaged in "unjustifiable conduct." See Father's Brief, at pp. 6-7. Section 5428(a) of the UCCJEA states:

8

30

(I)f a court of this Commonwealth has jurisdiction under this chapter because a person seeking to invoke its jurisdiction has engaged in unjustifiable conduct, the court shall decline to exercise its jurisdiction unless:

(1) the parents and all persons acting as parents have acquiesced in the exercise of jurisdiction;

(2) a court of the state otherwise having jurisdiction under sections 5421 (relating to initial child custody jurisdiction) through 5423 (relating to jurisdiction to modify determination) determines that this Commonwealth is a more appropriate forum under section 5427 (relating to inconvenient forum); or

(3) no court of any other state would have jurisdiction under the criteria specified in sections 5421 through 5423.

23 Pa. C.S.A. § 5428(a). Before considering whether any of the three exceptions contained in Section 5428(a) apply, this Court must first consider whether Mother has engaged in unjustifiable conduct. "Justifiable" is defined as "(c)apable of being legally or morally justified; excusable; defensible." BLACK'S LAW DICTIONARY (9th ed. 2009). This Court finds that when Mother chose to keep the parties' daughters in Allegheny County in August of 2013 instead of sending them back to Saudi Arabia with the parties' son, her conduct was justified.

First, Mother testified that she believed, mistakenly or not, that she was required to leave Saudi Arabia immediately following the parties' divorce in October of 2012. When Mother left Saudi Arabia, the children were required to stay with Father in Saudi Arabia due to Saudi "guardianship" laws, unless Father gave his permission for them to leave. Effectively, Father was awarded *de facto* custody of the children following the parties' divorce. Additionally, while it is true

9

that Father permitted the children to visit Mother in June of 2013 with the expectation that they return to Saudi Arabia in the fall, when it came time for the children to return to Saudi Arabia, the parties' daughters, whom this Court finds to be mature and intelligent, desired to stay with Mother. Mother wanted to respect her daughters' wishes and she did not want them to return to Saudi Arabia. She believed her daughters would live a better life in America. At the time, there was no custody order in place; the parties merely disagreed as to where the children would reside. Finally, Mother believed that if she sent the parties' daughters back to Saudi Arabia, she would have no chance to obtain custody under Saudi Arabian law and possibly would never see her children again.[5]

In sum, Mother's conduct in keeping the parties' daughters in Pennsylvania was based partly on her beliefs regarding the laws of Saudi Arabia and partly on her daughters' strong desire to remain in Pennsylvania. Her conduct was neither illegal nor in violation of any court order. For these reasons, this Court finds that Mother's conduct was justified.[6]

---

5. Considering the language contained in the July 17, 2014 Saudi Arabian Order of Court, Mother's beliefs regarding her chance to obtain custody in a Saudi court system appear to at least be reasonable, if not validated.

6. In *McCoy v. Thresh*, 862 A.2d 109, 115 (Pa. Super. 2004), the trial court determined that a father's conduct in retaining the children in Pennsylvania instead of returning them to California when summer was over, in contravention of the parents' agreement, was unjustifiable. However, the Superior Court affirmed the trial court's opinion on different grounds. *Id.* ("We agree with the trial court that Pennsylvania does not have jurisdiction under either the "home state" or the "significant contacts" provision of the UCCJA."). The Superior Court never reached whether the trial court's determination regarding the father's unjustifiable conduct was correct. The trial court's finding that the father's conduct in *McCoy* was unjustifiable is not binding on this Court, especially considering the specific and unique circumstances of this case.

10

Assuming *arguendo* that Mother's conduct in retaining the parties' daughters in Pennsylvania is considered unjustified, this Court still declines to apply the general rule stated in Section 5428(a), because of the exceptions contained in 23 Pa. C.S.A. § 5428(a)(1) and (3). The Uniform Law Comment to Section 5428 explains that the reasoning behind Section 5428(a) (i.e. a concern that one parent will take a child to another jurisdiction in an attempt to find a more favorable forum) has become diminished due to the enactment of the UCCJEA:

> The "Clean Hands" section of the UCCJEA has been truncated in this Act. Since there is no longer a multiplicity of jurisdictions which could take cognizance of a child-custody proceeding, there is less of a concern that one parent will take the child to another jurisdiction In an attempt to find a more favorable forum. Most of the jurisdictional problems generated by abducting parents should be solved by the prioritization of home state in section 201 (section 5421); the exclusive, continuing jurisdiction provisions of section 202 (section 5422); and the ban on modification in section 203 (section 5423). *For example, if a parent takes the child from the home state and seeks an original custody determination elsewhere, the stay-at-home parent has six months to file a custody petition under the extended home state jurisdictional provision of section 201 (section 5421), which will ensure that the case is retained in the home state.* (...)
>
> Nonetheless, there are still a number of cases where parents, or their surrogates, act in a reprehensible manner, such as removing, secreting, retaining, or restraining the child. This section ensures that abducting parents will not receive an advantage for their unjustifiable conduct. If the conduct that creates the jurisdiction is unjustified, courts must decline to exercise jurisdiction that is inappropriately invoked by one of the parties. For example, if one parent abducts the child pre-decree and establishes a new home state, that jurisdiction will decline to hear the case. There are exceptions. If the other party has acquiesced In the court's jurisdiction, the court may hear the case. Such acquiescence may

33

occur by (...) not filing in the court that would otherwise have jurisdiction under this Act.

*Id.* (Uniform Law Comment)(emphasis added).

Here, if Father believed that Mother's conduct in retaining their daughters in Pennsylvania was unjustified, the Uniform Law Comment suggests that his remedy was to initiate simultaneous child custody proceedings in Saudi Arabia within six months of learning of Mother's unjustified conduct. *See e.g. M.E.V. v. R.D.V.*, 57 A.3d 126, 128 (Pa. Super. 2012) (when mother informed father that the children would not be returning to their "home state" of New Jersey, father initiated proceedings in New Jersey within six months, thus preserving "home state" jurisdiction in New Jersey). Mother's conduct allegedly became "unjustifiable" on August 18, 2013, when she failed to return the parties' daughters to Saudi Arabia. However, Father waited approximately eight months to initiate child custody proceedings in Saudi Arabia. When Father finally did initiate child custody proceedings in Saudi Arabia on April 17, 2014, Saudi Arabia no longer had "home state" jurisdiction; Pennsylvania did. As such, this Court finds that, even if it considers Mother's conduct unjustified, the exceptions contained in Section 5428(a)(1) and (3) apply. Therefore, this Court will exercise jurisdiction over Mother's Second Complaint. *See also Al-Raddahi v. Al-Raddahi*, 2006 WL 5483095 (Columbia Cnty. Ct. Cmmn. Pls., May 17, 2006) ("When (mother) did not return on the plane as planned, (father) knew or should have known that (mother) was not going to return to Saudi Arabia in August 2005. He did nothing to address his custody concerns for over six months. He

12

knowingly allowed (mother) and the minor child to establish residency in Pennsylvania, their home state. Only after they had done so did he take action. He cannot now complain.")

## C. Simultaneous Proceedings

Father also argues that because a custody proceeding had already commenced in Saudi Arabia (on April 17, 2014) and a determination had already been made in Saudi Arabia (on July 17, 2014), under 23 Pa. C.S.A. § 5426, a Court of this Commonwealth may not exercise jurisdiction over Mother's Second Complaint (filed May 23, 2014). See Father's Brief, at pp. 5-6. Section 5426(a) states:

> (A) court of this Commonwealth may not exercise its jurisdiction under this subchapter if, at the time of the commencement of the proceeding, a proceeding concerning the custody of the child has been commenced *in a court of another state having jurisdiction substantially in conformity with this chapter* unless the proceeding has been terminated or is stayed by the court of the other state because a court of this Commonwealth is a more convenient forum under section 5427 (relating to inconvenient forum).

23 Pa. C.S.A. § 5426(a) (emphasis added). As explained above, Saudi Arabia no longer had jurisdiction under the UCCJEA at the time Father initiated proceedings there on April 17, 2014. Therefore, because a child custody proceeding had not been commenced in another state "having jurisdiction substantially in conformity with (the UCCJEA,)" this Court finds that Subsection (a) of Section 5426 does not apply.

13

### D. This Court's Prior Decision regarding Jurisdiction

Father's final argument is that, because this Court had already made an "initial custody determination" on April 4, 2014 by finding that it lacked jurisdiction to address Mother's First Complaint, this Court continues to lack jurisdiction with respect to Mother's Second Complaint. See Father's Brief, at p. 3 (citing 23 Pa. C.S.A. §§ 5406, 5421). This argument is flawed because the jurisdictional determination with respect to Mother's First Complaint was not an "initial child custody determination" as Father suggests in his Brief. The UCCJEA defines a "child custody determination" as:

> A judgment, decree or other order of a court providing for legal custody, physical custody or visitation with respect to a child. The term includes a permanent, temporary, initial and modification order. The term does not include an order relating to child support or other monetary obligation of an individual.

23 Pa. C.S.A. § 5402. An "initial determination" is defined as "(t)he first child custody determination concerning a particular child." *Id.* As these sections make clear, a determination with respect to jurisdiction is not an "initial child custody determination."[7] As such, this Court finds that Sections 5406 and 5421,

---

7. Even if the April 4, 2014 jurisdictional determination with respect to Mother's First Complaint is considered a "child custody determination," under Father's reasoning, Pennsylvania courts would never be able to exercise jurisdiction, even if Father never initiated custody proceedings or waited several years to initiate child custody proceedings in Saudi Arabia following entry of the April 4, 2014 Order. Clearly, this result would be inconsistent with the goals of the UCCJEA and the Legislature's definition of "home state."

14

read together, do not prevent this Court from finding that it has jurisdiction over Mother's Second Complaint.[8]

## II. REGISTRATION OF THE SAUDI ARABIA CUSTODY ORDER

On July 25, 2014, pursuant to 23 Pa. C.S.A. § 5445(a), Father filed a request to have the July 17, 2014 Saudi Arabia Custody Order of Court, which gave Father sole custody of the parties' daughters, registered in Allegheny County. On August 11, 2014, pursuant to 23 Pa. C.S.A. § 5445(d), Mother filed an objection to said registration, arguing that the Saudi Order should not be registered because 1) Saudi Arabia did not have jurisdiction under the UCCJEA to enter said Order, and/or 2) the Order violates Pennsylvania public policy. See Plaintiff's Response to Defendant's Reply to Rule to Show Cause Brief, at pp. 16-18. Under Section 5445(d), a Court shall decline to register a foreign custody order if the person contesting registration establishes that:

> (1) the issuing court did not have jurisdiction under Subchapter B (relating to jurisdiction);
>
> (2) the child custody determination sought to be registered has been vacated, stayed or modified by a court having jurisdiction to do so under Subchapter B; or

---

8. In further support of Father's argument that the jurisdictional determination regarding Mother's First Complaint was binding on her Second Complaint, Father argues that "[f] parties were permitted to continue to repeatedly request a determination of initial custody jurisdiction it would encourage parents to hold children in a jurisdiction in order to forum shop (. . .) Father should not be punished by losing custody jurisdiction based on the length of the Court process." Father's Brief, at p. 3. This Court realizes that there was a lengthy delay in deciding whether it had jurisdiction over Mother's First Complaint. Nevertheless, Father's argument is without merit, because, as stated above, in order to preserve "home state" status in Saudi Arabia, Father should have initiated simultaneous custody proceedings in Saudi Arabia within six months of learning that his daughters were not returning. Nothing prevented him from doing so.

(3) the person contesting registration was entitled to notice, but notice was not given in accordance with the standards of section 5408 (relating to notice to persons outside Commonwealth), in the proceedings before the court that issued the order for which registration is sought.

23 Pa. C.S.A. § 5445(d). Here, the Saudi Order is not entitled to registration because Saudi Arabia did not have jurisdiction to enter the initial child custody determination when Father initiated proceedings there on April 17, 2014.

Assuming *arguendo* that Saudi Arabia did have jurisdiction to make the initial child custody determination, this Court still declines entry of the Order in Allegheny County under principles of *comity*, as said Order violates Pennsylvania public policy. A cursory review of the Saudi Order (attached hereto as Exhibit "A") reflects that the basis for awarding sole custody to Father is inconsistent with Pennsylvania public policy.[9] In pertinent part, the Saudi Order reads as follows:

> First, *(t)he non-Muslim shall not have right of custody of a Muslim*, the scholars emphatically supported this, Ibn Al Qayem stated in Zad (5/410) 'The custodian's care is that a child be grown up and educated on his religion of Islam, and after maturity is so difficult for him/her to leave it.'

---

9. The parties intended to call experts to testify regarding this issue. At the conclusion of the October 9, 2014 hearing, the parties agreed that the Court would first decide the jurisdictional issue and, if necessary, a second date would be scheduled for the parties to call experts to testify regarding the public policy issue. The Court finds that due to its jurisdictional finding stated herein, and its reasons for declining entry of the Saudi Order, no expert testimony is necessary on this issue.

16

Second, (t)he Companions view that *the custody of each girl who attains the seventh year of age is with her father,* Al Insaf stated (24/490): '*if a girl completes the seventh year of age she should stay with her father.*' Al Bahouti stated in Al Kashaf (5/502): '*the custody of a girl who attains the seventh year or more of age is with her father till puberty.*'

Third, (o)n the Shariah basis *if either parent desires to live in a remote country, priority for child custody shall go to the father, whether the traveler is the father or mother,* as stated by Al Merdawi in Al Insaf (24/480).

Fourth, *(t)he female after attaining seventh year of age shall have no choice and she should stay with her father till marriage,* providing the custody aim is to protect her, and *the father is often more careful in protecting his daughter which is why she is engaged through him. Therefore she should remain under his care for her own safety to guard her against any immoral acts.*

Fifth, in custody, the benefit of the person under custody has priority for issuing ruling in custody disputes. The two girls were born in the Kingdom of Saudi Arabia, and *it is priority for them to stay in the Kingdom of Saudi Arabia rather than any other country,* in particular their brother Mohammad is living with their father, the plaintiff for the whole family to live under the same roof.

*On all the above mentioned,* I have issued the ruling that the custody of the two girls May & Maria shall be with the plaintiff.

See Kingdom of Saudi Arabia, Ministry of Justice, Order of Court dated July 17, 2014, at pp. 5-6 (emphasis added) (errors in original). These provisions, which appear to be the basis for the Saudi Court's award of sole custody to Father ("On all of the above mentioned..."), clearly do not reflect public policy in Pennsylvania. Therefore, even if Saudi Arabia did have jurisdiction in this custody

17

39

matter, this Court declines to register the July 17, 2014 Order of Court under principles of *comity*.[10]

### III. CONCLUSION

For the reasons set forth above, this Court finds that it has jurisdiction over Mother's Second Complaint for Custody pursuant to 23 Pa. C.S.A. § 5421(a) and declines registration of the Saudi Arabia Custody Order of Court dated July 17, 2014 pursuant to 23 Pa. C.S.A. § 5445(d)(1) and under principles of *comity*. Accordingly, this Court enters the following Order:

---

10. Some of our sister states have declined to defer to certain countries and/or register custody orders similar to the Saudi Arabia Order *sub judice* under principles of *comity*. *See e.g., Ali v. Ali*, 652 A.2d 253, 260 (N.J. Super., 1994) (refusing to recognize and enforce a Gaza Court custody decree based in Islamic/Sharia law); *Tataragasi v. Tataragasi*, 477 S.E.2d 239, 246 (N.C. App., 1996)(finding Turkish/Islamic law not in conformity with North Carolina law in custody proceeding); *Amin v. Bakhaty*, 812 So.2d 12, 23 (La. App. I Cir., 2001)(declining to extend *comity* toward the Egyptian/Islamic legal system in custody proceeding); *Charara v. Yatim*, 937 N.E.2d 490, 497-99 (Mass. App. Ct. 2010)(child custody determination by the Lebanese Jaafarite Court was not decided under law in substantial conformity with Massachusetts law governing child custody cases, and thus was not entitled to *comity*).